UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORIAN DELBERT-GERALD
WILLIS,

       Plaintiff,

v.

TONY TRIERWEILER,

       Defendant.

Case No. 2:17-cv-10390
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING MOTION FOR
RECONSIDERATION AND ALLOWING AMENDED PETITION [25],
DENYING PETITION FOR WRIT OF HABEAS CORPUS [1, 24],
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

---

After attempting to start a fire at his girlfriend's residence, Dorian Delbert-Gerald Willis ("Willis") was convicted of arson, domestic violence, and being a fourth felony habitual offender, following a jury trial in the Macomb County Circuit Court. Willis has now filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions.

Having reviewed the pleadings and state-court record, the Court finds that the state courts reasonably concluded that the claims raised in Willis' original petition were without merit. The Court summarily dismisses the claims raised in the amended petition because they are conclusory and wholly unsupported. The Court will thus deny Willis's petition.

# I.  Background

The following facts as recited by the Michigan Court of Appeals are presumed

correct on habeas review. *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009) (citing

28 U.S.C. § 2254(e)(1)).

> Defendant's convictions arise from a fire that was started in the closet of Vickie Lynn Danski's residence. Defendant and Danski were involved in a romantic relationship. On October 23, 2012, after drinking alcohol, the couple got into an argument. Defendant choked Danski, but she managed to run out of the home. Defendant followed and again assaulted her. She convinced him to let her go. Defendant returned to the porch of Danski's residence and instructed her to return to the home or he would kill her three ferrets. Danski remained outside her home and later heard someone running. When the person got to an illuminated area, she could see that it was defendant, who was yelling on a phone and asking someone to pick him up. Danski returned to her home, found that it was locked, but entered with her front door key. She was in the home for two minutes when she smelled smoke. When she opened a closet, flames rose out from inside. Danski managed to retrieve her three ferrets and went to a neighbor's home for help. Arson investigators determined that the fire originated inside the closet. There was no evidence that an accelerant was used to start the fire, but a propane torch was discovered inside the closet where the fire started. Investigators ruled out electrical, mechanical, gas, or other accidental causes of the fire. They concluded from the burn pattern that the fire was intentionally set with the propane torch.
>
> Defendant testified that he was in a paranoid state and believed that Danski had called the police. Before the police arrived, he went into the closet to smoke crack cocaine with the propane torch because he did not want to be caught with it or seen through the windows. He denied intentionally starting the fire.

*People v. Willis*, No. 319616, 2015 WL 4064268, at *1 (Mich. Ct. App. July 2, 2015).

The conviction was affirmed on appeal. *Id., lv. den*., 873 N.W.2d 583 (2016).

Willis filed his original petition seeking a writ of habeas corpus on February 9,

2017. (ECF No. 1.) He seeks relief on seven grounds, which the Court refers to as his

"2017 Claims":

I.  [Willis] is entitled to entry of a judgment of acquittal on the arson charge as there was insufficient evidence to support the charge.

II.  [Willis] is entitled to habeas relief where the verdict is against the great weight of the evidence; due to the prosecutor withholding of discovery materials until the second day of trial.

III.  [Willis] is entitled to habeas relief where he was denied the right of self-representation, and the trial court failed to make a mandatory inquiry as established by the United States Constitution Sixth and Fourteenth Amendments.

IV.  [Willis] is entitled to habeas relief where jury's instructions on presumption of innocence was omitted; trial counsel was ineffective where he failed to specifically request (a) corrected jury instruction on presumption of innocence.

V.  [Willis'] Fourth Amendment right to be free from illegal search and seizure was violated; where the fire marshals failed to obtain a warrant to search [Willis'] premises. Trial court failed to provide [Willis] with an adequate remedy to address [Willis'] Fourth Amendment claim.

VI.  [Willis] was denied his Sixth Amendment right to proceed to trial with counsel of his choice; violating his right to due process of law protected under both state and federal constitutions.

VII.  [Willis] is illegally detained; where the affidavit submitted to the magistrate judge for an arrest warrant was false and composed of inaccurate information, trial attorney was ineffective for failing to challenge issuance of the [arrest] warrant.

(*Id.*)

On May 31, 2018, the Court granted Willis's motion to hold the petition in abeyance so that he could return to the state courts to exhaust additional claims, which the Court refers to as his "2018 Claims." (ECF No. 16.). Willis filed a post-conviction motion for relief from judgment with the Macomb County Circuit Court in 2018, which was denied. The Michigan appellate courts denied leave to appeal. *People v. Willis*, No. 347549 (Mich. Ct. App. June 19, 2019); *lv. den.*, 937 N.W. 2d 651 (2020); *reconsideration den.* 943 N.W.2d 117 (2020). So Willis successfully exhausted the 2018 claims on May 26, 2020. *See People v. Willis*, 943 N.W.2d 117 (Mich. 2020).

Rather than filing an amended petition to add his 2018 claims, Willis then requested an extension of the stay to exhaust a third set of claims based on newly discovered evidence, which he claimed he only learned about after the conclusion of his first state post-conviction proceedings. (ECF No. 18.) The Court denied the request to exhaust a third set of claims, concluding that Willis had failed to demonstrate that his latest proposed claims were meritorious; nor did he show good cause for failing to raise them sooner (ECF No. 19.) The Court allowed Willis two further extensions to file an amended petition to add the 2018 claims (ECF No. 19, 21), with a final deadline of July 28, 2021 (ECF No. 21, PageID.1274).

The Court did not receive an amended petition by that date, so on July 28, 2021, the Court lifted the stay and ordered that it would only consider Willis's original 2017 claims. (ECF No. 22.)

But a month later, mail from Willis arrived at the Court, indicating that Willis had in fact met the deadline. On August 19th, the Court received an Amended Petition dated June 24th. (ECF No. 24, PageID.1354–1355.) On September 7, 2021, the Court received another copy of the Amended Petition and a Motion for Reconsideration of the Court's order lifting the stay and reopening the case for the 2017 claims only. (ECF Nos. 25, 26.)

The Court will first address the motion for reconsideration, and then turn to the merits of Willis's habeas petition.

## II. The Motion for Reconsideration

To prevail on a motion for reconsideration, a movant must show the existence of a palpable defect that misled the parties and court and the correction of such defect would result in a different disposition of the case. E.D. Mich. L.R. 7.1(h)(3). A defect is palpable if it is "obvious, clear, unmistakable, manifest, or plain." *Olson v. Home Depot*, 321 F.Supp.2d 872, 874 (E.D. Mich. 2004).

Willis asks the Court to accept his Amended Petition, which adds the 2018 claims. (ECF No. 25.) He states that he met the Court-imposed deadline for filing the amended petition. (*Id.*). Willis has attached documentation showing that he placed the amended petition into the prison mail system for mailing on June 24, 2021. (*Id.*, PageID.1364, 1366–67).

Under the "prison mailbox rule," submissions by *pro se* petitioners are considered filed at the moment of delivery to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 271–72 (1988). While the Court did not timely receive Willis's amended petition, that does not appear to be the fault of Willis. He has presented evidence of timely filing and thus, the Court GRANTS Willis's motion for reconsideration (ECF No. 25) and accepts the Amended Petition (ECF No. 24).

## III. The Habeas Petitions

The Court therefore turns to the merits of Willis's petition for a writ of habeas corpus. Willis's Amended Petition adds eight new grounds for relief in addition to the seven originally raised. (*See* ECF Nos. 1, 24.) The Court will address the two sets of claims separately because Willis has submitted very different briefing for each.

## A. The New 2018 Claims

Despite the additional time he was given, Willis's Amended Petition simply lists the new claims. It contains no evidentiary support or legal argument.

But "habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). A § 2254 petition has to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Rules Governing § 2254 Cases, Rule 4, Rule 2(c). A district court must dismiss a habeas petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rules Governing § 2254 Cases, Rule 4. Thus, "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland*, 512 U.S. at 856; *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has duty to "screen out" petitions that lack merit on their face). A petition may also be summarily dismissed where the allegations are so "vague (or) conclusory" that they do not "point to a real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 76 n.7 (1977) (internal citations omitted).

Here, the entirety of Willis's amended petition raising the 2018 Claims is as follows:

I.  The trial court erred, and abused its discretion denying petitioner his state and federal due process rights to a fair trial do (sic) to evidence admitted at trial that was tainted fruit of the poisonous tree constituting a structural error, structural defect, that warrants a remand for a new trial and evidentiary hearing.

II.  The trial court erred in denying relief from judgment to petitioner by denying his state and federal due process, and equal protection rights to fair trial do (sic) to police and prosecutorial misconduct,

entrapment, that warrants his judgment and sentence vacated and remanded for an entrapment hearing, evidentiary hearing, and new trial.

III.   Petitioner is entitled to habeas relief; where the trial court made an error of law, and was bias in denying that the petitioner was denied his constitutional due process and equal protection right to a fair trial by piercing the veil, engaging in judicial bias, judicial misconduct, and judicial entrapment that warranted a new trial, the judgment be vacated and remanded do (sic) to structural errors, structural defects that require an entrapment hearing and evidentiary hearing.

IV.   Petitioner is entitled to habeas relief, due to the trial court's failure to adjudicate petitioner's Fifth, Sixth, and Fourteenth Amendment constitutional claims on the merits, based on a fatal variance and constructive amendment to the information [indictment] created by the jury instructions.

V.   Petitioner was denied his constitutional right, where the police and prosecutor obtained a fatally defective arrest warrant based on known material false statements a reckless disregard for the truth, omissions that mislead the magistrate and lacked probable cause that warranted a full Franks hearing, an entrapment hearing, and a Walker hearing, the trial court failed to provide petitioner with these adequate remedies to address petitioner's Fourth Amendment claim and review, resulted in a failure to adjudicate the claims on the merits.

VI.   Petitioner was denied his Federal constitutional due process and equal protection rights to a fair trial by the prosecution's suppression of material exculpatory evidence that was favorable to the defense, that include but are not limited to video, photographs, police note's and reports, crime scene lab reports, and did not turn over or present this evidence that tainted the entire trial process.

VII.   Petitioner was denied his constitutional rights based on prosecutorial misconduct and ineffective assistance of counsel where he was intentionally obstructed from presenting a "complete defense" do (sic) to the suppression of the evidence that amounts to a fraud on the court.

VIII.   Petitioner was denied his constitutional rights, where the trial court abused its discretion in failing to resolve defense counsel's conflict of interest causing ineffective assistance, and by appellate counsel's failure to perfect an appeal of right to non-frivolous claims, that have merit, and are clearly stronger than most of those raised on appeal.

(ECF No. 24, PageID.1351–1352.)

Missing from these claims is any identification or explanation of the alleged tainted evidence, prosecutor misconduct, judicial bias, inappropriate jury instruction, or suppressed evidence. Such conclusory allegations, without any reference or citation to supporting facts, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *Washington v. Renico,* 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding).

The Court leniently construes pro se pleadings but that liberality "does not require a court to conjure allegations on a litigant's behalf . . . ." *Erwin v. Edwards*, 22 F.App'x. 579, 580 (6th Cir. 2001). Yet Willis's failure to cite to any applicable facts or law would require the Court to conjure up allegations on his behalf in order to grant any relief. And having allowed an entire year of extensions for Willis to file this Amended Petition, the Court will not extend the deadline even further by allowing more time for Willis to submit supplemental briefing. Nor is it the Court's job to figure out which facts pertaining to the 2017 claims apply to the 2018 claims. Accordingly, the Court summarily dismisses the 2018 Claims without requiring an answer from the State.

With that, the Court turns to the merits of the original 2017 Claims.

## B. The 2017 Claims

### 1. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions

but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). The Supreme Court has emphasized that "'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## 2. Analysis

**Claim 1 — Insufficient Evidence.**

In his first claim, Willis argues that there was insufficient evidence to prove that he intentionally set the fire that damaged Danski's house. At trial, Willis acknowledged starting the fire but claimed that it was an accident.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry, though, on review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). (internal citation and footnote omitted) (emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). Indeed, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"). Thus, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence.").

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). Here, it was not.

The Michigan Court of Appeals rejected Willis's claim on the merits:

> In the present case, Danski testified that defendant consumed alcohol and became very aggressive and agitated. He assaulted and threatened to kill her, demanded that she return to her residence, and threatened to kill her ferrets. Danski did not re-enter her home while defendant was

still there. She testified that the ferrets' cage was difficult to open, and it was not open when she returned to her house. Danski later observed defendant running from the home and speaking on his phone requesting a ride. Shortly after she re-entered the home, she discovered smoke and a fire in the closet. Arson investigators determined that the fire originated in the closet and discovered a propane torch in the closet. Eastpointe Fire Marshal Szymanski rejected the defense theory that an accidental burning occurred. Rather, Szymanski's analysis of the charring and burn patterns caused him to conclude that the fire was intentionally set. He opined that the burn patterns indicated that someone held the propane torch to clothing hanging in the closet. An accidental dropping of the propane torch on the floor would have left burn patterns at the floor level. The burn patterns did not start until approximately two feet from floor level. Szymanski also examined the home to check for other mechanical, electrical, or gas issues, as well as accidental causes such as the failure to extinguish a candle or cigarette. He eliminated all other causes. The closet, where the propane torch was located, was the point of origin.

Defendant admitted that he went into the closet to smoke crack cocaine with the torch and a pipe because of his belief that the police were coming, and he did not want to be caught with the drugs. Although defendant denied intentionally starting the fire, the jury was free to believe or disbelieve in whole or in part the credibility of defendant's testimony. The jury could find from the evidence that defendant was enraged at Danski because he was in a paranoid state from his use of drugs and believed that she had called the police, and because she refused to comply with his demands to return to the home. Whether or not defendant tried to open the ferrets' cage, the jury could find that he decided to use the propane torch to start a fire in the closet, where Danski kept her family mementos, because he was angry at Danski. Although defendant testified that he left the home, Danski testified that defendant fled the home despite his recent surgery and sought a ride away from the area. The circumstantial evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that a burning of the dwelling house occurred and that it was the result of an intentional criminal act by defendant.

*People v. Willis*, 2015 WL 4064268, at * 2–3 (internal citation omitted).

Under Michigan law, the elements of arson of a dwelling house are that: (1) a

dwelling house was burned; (2) by, or at the urging of, or with the assistance of the

defendant; and (3) the fire was willfully or maliciously set. *See Gardner v. Kapture,*

12

261 F. Supp. 2d 793, 804 (E.D. Mich. 2003) (citing *People v. Lindsey*, 268 N.W. 2d 41 (1978)). Under Michigan law, circumstantial evidence, including evidence of a defendant's motive and opportunity, may be considered in an arson case. *See Bagnick v. Michigan Dept. Of Corrections,* 37 F. App'x. 125, 128 (6th Cir. 2002) (citing *People v. Horowitz*, 194 N.W.2d 375, 376 (Mich. App. 1971)). "In fact, due to the usually surreptitious nature of the offense of arson, 'proofs will normally be circumstantial.'" *Id.* As the Michigan Supreme Court has observed:

> [T]here is rarely direct evidence of the actual lighting of a fire by an arsonist; rather, the evidence of arson is usually circumstantial. Such evidence is often of a negative character; that is, the criminal agency is shown by the absence of circumstances, conditions, and surroundings indicating that the fire resulted from an accidental cause.

*People v. Nowack*, 614 N.W.2d 78, 83 (2000) (quoting *Fox v. State,* 384 N.E. 2d 1159 (Ind. 1979)).

In the present case, as reasonably set forth by the Michigan Court of Appeals, the prosecution presented sufficient circumstantial evidence from which a jury could infer that Willis willfully and maliciously started the fire. This precludes habeas relief for Willis. *Bagnick,* 37 F. App'x. at 129–30.

### Claim 2 — The Great Weight of Evidence was in Willis's Favor Because the Prosecutor Withheld Relevant Evidence.

Willis's second claim has two parts.

First, Willis argues that the verdict went against the great weight of the evidence. Willis is not entitled to relief because the claim is not cognizable on habeas review. A federal habeas court cannot grant habeas relief because a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796

(E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Nash v. Eberlin*, 258 F. App'x. 761, 764, n. 4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument")*; Artis v. Collins,* 14 F. App'x. 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).  The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict the petitioner, the fact that the verdict went against the great weight of the evidence does not entitle him to habeas relief. *Id.* So Willis is not entitled to relief on this portion of his second claim.

Second, Willis contends that the prosecutor violated a discovery order by failing to turn over 130 photographs of Danski's home until the second day of trial. (*See* ECF No. 7-6, PageID.421–423.)

To the extent that Willis is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief.  "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)).  A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F. 3d 416, 441 (6th Cir. 2002).

To the extent that Willis is contending that the violation of the discovery order violated his due process rights, this claim also fails. In *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002). A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012).

Willis's *Brady* claim fails for several reasons. First, all of this evidence was disclosed to Willis during trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F.3d 398, 421 (6th Cir. 2002) (internal citations omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also United States v. Benc*s, 28 F.3d 555, 560–61 (6th Cir. 1994).

Secondly, as the Michigan Court of Appeals noted in rejecting Willis's claim, Willis failed to show that any of these photographs were favorable to him. *See People v. Willis*, 2015 WL 4064268, at * 4. This was not an unreasonable application of Supreme Court law and allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *See Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). Willis is not entitled to relief on his claim because he failed to show that these photographs contained exculpatory information.

Lastly, Willis claims that the prosecution should have introduced these photographs into evidence once they became available to him. But this argument is foreclosed by the fact that his defense counsel asked that these photographs be excluded from evidence because of their late production and the judge agreed to exclude them. *People v. Willis*, 2015 WL 4064268, at * 4. A defendant in a criminal case cannot complain of error which he himself has invited. *Shields v. United States*, 273 U.S. 583, 586 (1927). When a petitioner invites an error in the trial court, he or she is precluded from seeking habeas corpus relief for that error. *See Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001). Because Willis successfully moved for the exclusion of these photographs, he cannot now complain that they were not admitted into evidence. Willis is not entitled to relief on this portion of his second claim.

### Claim 3 — Self-representation.

Willis next contends that he was denied the right of self-representation.

On the first day of trial, prior to jury selection, Willis informed the judge that he had filed a motion to represent himself. The judge replied that she never received

the motion and was not disposed "to grant it at this point." She noted that defense counsel was Willis's third attorney. The judge also said she was not going to delay the trial. Willis's only response was that he wanted copies of the discovery. (ECF No. 7-5, PageID.160–164.)

On the second day of trial, Willis moved to disqualify the judge. While making this motion, Willis referred to the fact that he had filed a motion for self-representation. Willis moved to disqualify the judge because of something she said the prior afternoon. The motion was denied. (ECF No. 7-6, PageID.428–433.)

The Michigan Court of Appeals addressed Willis's self-representation claim on the merits. In rejecting the claim, the state court ruled:

> The record does not reflect an unequivocal request by defendant to represent himself. On the first day of trial, defendant questioned whether a conflict of interest existed with defense counsel because he failed to pay his attorney in accordance with their fee agreement. Defendant also expressed dissatisfaction with all three of his attorneys because he did not receive discovery. When pressed, however, defendant acknowledged that his discovery requests pertained to other cases. On the second day of trial, defendant sought to disqualify the trial court for commenting that he could appeal, which defendant maintained showed that the court had predetermined his guilt. Once defendant's request to disqualify the trial judge was denied, he sought to hold the proceedings in abeyance. When the trial court denied that request and refused to allow defendant to proceed before the chief judge, defendant stated that his attorney had *jokingly* demanded to be paid and called him a "bitch," which defense counsel adamantly denied. The colloquy on the second day of trial likewise does not reflect a legitimate and unequivocal request for self-representation, but rather an attempt to disqualify the trial court.

*People v. Willis*, No. 319616, 2015 WL 4064268, at * 6 (footnote omitted) (emphasis in original). This was not an unreasonable application of federal law.

Criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). The right to self-representation, however, is not absolute. *Martinez*, 528 U.S. at 161. Moreover, a defendant's request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *See also U.S. v. Martin,* 25 F. 3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally."). Finally, a defendant's invocation of his right of self-representation must be timely made. *See, e.g.*, *Moore v. Haviland,* 531 F. 3d 393, 403 (6th Cir. 2008).

Willis is not entitled to habeas relief on his self-representation claim for several reasons.

First, Willis did not invoke his right to self-representation until right before the start of trial. "[E]ven where the right to self-representation is clearly invoked, it must be done so in a timely manner, and courts will balance any such assertion against considerations of judicial delay." *U.S. v. Martin,* 25 F.3d at 295–96. Although "*Faretta* did not establish a bright-line rule for timeliness," it did "necessarily incorporate a loose timing element." *Hill v. Curtin*, 792 F.3d 670, 678 (6th Cir. 2015). The Sixth Circuit noted that "to the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial." *Id.*

Willis's request was not made until the first day of trial. And "A trial judge may fairly infer on the day of trial—as the jurors are on their way to the courtroom— that a defendant's last-minute decision to represent himself would cause delay, whether or not the defendant requests a continuance." *Hill v. Curtin*, 792 F.3d at 681; *see also Robards v. Rees*, 789 F. 2d 379, 383-84 (6th Cir.1986) (state trial court did not err in denying the habeas petitioner's motion to represent himself when the motion was not made until the first day of trial and after the clerk had called the roll of jurors; petitioner's request for self-representation, if honored by the trial court, "would have impermissibly delayed the commencement of the trial."). Although Willis claims that he sent a motion prior to the first day of trial, he never produced a copy and does not indicate the date which it was sent. But nothing suggests it was sent sufficiently before the trial. Thus, even if Willis sent a request shortly before the first day of trial to represent himself, the judge could have reasonably concluded that the request was untimely with the trial date being imminent.

Willis is also not entitled to relief on his claim because he did not clearly and unequivocally ask to represent himself. As mentioned, the Michigan Court of Appeal's ruling to this effect was not an unreasonable application of federal law. Although Willis asked to represent himself when addressing the judge, the essence of his remarks was to express dissatisfaction with his counsel. This does not equate to a motion to proceed *pro se. See Martin*, 25 F.3d at 296.

Willis's claim also fails because, after discussing the matter with the trial judge, he allowed counsel to represent him at his trial and sentencing without making

19

any subsequent demands to represent himself. "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).

Finally, to the extent that Willis is claiming that the trial court violated the provisions of Mich. Ct. R. 6.005(D), this is not cognizable on habeas review. *See Cage v. Rapelje*, No. 08–13104, 2011 WL 3518163 (E.D. Mich. Aug. 12, 2011). It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

For all of these reasons, Willis is not entitled to habeas relief on his third claim.

### Claim 4 — Jury Instruction & Ineffective assistance of counsel

Willis next contends that the trial judge erred in failing to instruct the jurors on the Michigan Model Criminal Jury Instructions regarding arson. In the alternative, Willis argues that trial counsel was ineffective for failing to request such an instruction. The relevant model instruction provides: "When there is a fire, the law assumes that it had natural or accidental causes. The prosecutor must overcome this assumption and prove beyond a reasonable doubt that the fire was intentionally set." M Crim JI 2d 31.1.

The Michigan Court of Appeals rejected Willis's claim:

Defendant argues that M Crim JI 31.1 should have been given because it was the defense theory of the case that the fire was accidental, and

because he testified that he merely went into the closet with the propane torch to smoke crack cocaine before the police arrived, and he denied any malicious intent to start a fire. Even assuming that defendant's testimony would have supported giving M Crim JI 31.1, the trial court's instructions fairly presented the issue to the jury and sufficiently protected defendant's rights. Although the trial court did not instruct the jury on the presumption of accident, it instructed the jury that to prove the crime of burning a dwelling house, the prosecutor "must prove . . . beyond a reasonable doubt  . . that when the defendant burned the dwelling or any of its contents, he intended to burn the dwelling or its contents, or intentionally committed an act that created a very high risk of burning the dwelling or its contents, and that while committing the act, the defendant knew of that risk and disregarded it."  The court's instructions did not permit the jury to convict defendant of burning a dwelling house if it believed his testimony and found that he neither intended to burn the dwelling or its contents, nor committed an intentional act that created a very high risk of burning the dwelling or its contents and knowingly disregarded that risk. Accordingly, there was no error.

In addition, even if defense counsel would have been justified in requesting M Crim JI 31.1, because the trial court's jury instructions fairly presented the substance of the omitted instruction, defendant was not prejudiced by defense counsel's failure to request the instruction. Accordingly, we reject defendant's related ineffective assistance of counsel claim.

*People v. Willis*, No. 319616, 2015 WL 4064268, at * 7 (internal citation omitted).

To warrant habeas relief, a jury instruction error must so infect the entire trial that the resulting conviction violates due process, and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154–155 (1977). The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).

Moreover, in determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine

21

whether that instruction had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido,* 555 U.S. 57, 61–62 (2008); *California v. Ray,* 519 U.S. 2, 5 (1996).

The Michigan Court of Appeals reasonably determined that the trial court's failure to instruct the jurors on M Crim JI 31.1 did not deprive Willis of such a fair trial. The state court properly found that the entirety of the instructions adequately informed the jurors that they would have to find that Willis intentionally set the fire in order to convict him of arson. Because the trial judge's instructions, taken as a whole, adequately instructed the jury about the intent element and the other elements required to find Willis guilty of arson, he is not entitled to habeas relief on this claim. *See Jones v. Smith,* 244 F. Supp. 2d 801, 816–17 (E.D. Mich. 2003).

Willis's related ineffective assistance of counsel claim fares no better.

To show that he was denied the effective assistance of counsel, Willis must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, Willis must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As just discussed, the instructions as given were adequate to instruct the jury that they would have to find that Willis intentionally set the fire in order to find him guilty of arson. Thus, counsel's failure to object to the instructions was not objectively unreasonable. Nor has Willis shown that a different instruction would have changed

the outcome of his trial as to entitle him to habeas relief on this claim. *See Jacobs v. Sherman,* 301 F. App'x. 463, 466-67 (6th Cir. 2008).

### Claims 5 & 7 — Fourth Amendment and Ineffective Assistance of Counsel

Willis's two Fourth Amendment claims and the related ineffective assistance of counsel claims can be discussed together.  In his fifth claim, Willis  argues that his Fourth Amendment rights were violated by the fire marshal's failure to obtain a search warrant prior to searching Danski's home after the fire, during which the propane torch used to start the fire was recovered. In his seventh claim, Willis alleges that his Fourth Amendment rights were also violated when the state court magistrate issued a warrant for his arrest that was based on false and inaccurate information. Willis alternatively alleges that his trial counsel was ineffective for failing to challenge the unlawful search and illegal arrest.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he did so or even whether the Fourth Amendment

claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grounds,* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis*, 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F. 2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown*, 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon,* 35 F. 3d 1308, 1321 (9th Cir. 1994)).

The Court is aware that Willis's trial counsel did not file a motion to suppress the evidence or to challenge the arrest, thus there was no ruling from the trial court on whether the search of Danski's house or Willis's arrest were constitutional. Willis, did, however, raise his Fourth Amendment claims before both the Michigan Court of Appeals and the Michigan Supreme Court on direct appeal. Both courts analyzed and rejected his claims.

That the claims were not decided by trial court does not mean that Willis did not have a full and fair opportunity to litigate them. *See Good v. Berghuis*, 729 F. 3d 636, 638-40 (6th Cir. 2013). The Sixth Circuit in *Good* noted that "[t]he *Powell*

'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id.* at 639.

The opportunity to litigate, for purposes of *Stone v. Powell*, encompasses more than an evidentiary hearing in the trial court. It also includes corrective action available through the appellate process on direct review of the conviction. *See Rashad v. Lafler*, 675 F. 3d 564, 570 (6th Cir. 2012) (petitioner had ample opportunities in state court to present his Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004) (petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief). Because all of the material facts were before the state appellate courts on direct review and the appellate process was not otherwise deficient, Willis had a full and fair opportunity to litigate his Fourth Amendment claims and is thus not entitled to relief.

Willis, however, claims that trial counsel was ineffective for failing to challenge the legality of the search or the legality of his arrest.

To establish such a claim, Willis must prove that his Fourth Amendment claims are meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Willis cannot do so.

First, as to his claim that trial counsel was ineffective for failing to challenge the warrantless search of Danski's house, the Michigan Court of Appeals rejected this claim on the merits:

> Evidence obtained while firefighters are lawfully on the premises putting out a fire is admissible under the plain view doctrine. *People v. Tyler*, 399 Mich. 564, 578; 250 NW2d 467 (1977), *aff'd sub nom* 436 U.S. 499; 98 S Ct 1942; 56 L.Ed.2d 486 (1978). However, a search warrant must be obtained after the exigency ends. *Id.* at 578–579. Although defendant argues that the fire investigation, conducted three days after the fire was extinguished, was illegally conducted without a warrant, he has not established factual support for this claim or shown that he has standing to challenge the search. The constitutional right to be free from unreasonable searches and seizures is personal and may not be invoked by third parties. *People v. Zahn*, 234 Mich.App 438, 446; 594 NW2d 120 (1999). The record demonstrates that the home was leased by Danski, not defendant. Even if defendant's periodic presence at the house could be considered sufficient to confer standing, see *Minnesota v. Olson*, 495 U.S. 91, 96–97; 110 S Ct 1684; 109 L.Ed.2d 85 (1990) (a person's status as an overnight guest in a home is sufficient to show that the person has a reasonable expectation of privacy in the home), it is not clear or obvious that a search warrant was necessary for the officers to investigate the fire scene and to seize evidence. A warrant is not necessary when a search is conducted pursuant to a property owner's consent. *People v. Beydoun*, 283 Mich.App 314, 337; 770 NW2d 54 (2009). It is unknown if Danski, as the tenant of the premises, gave her consent to search the premises. Because the record lacks the necessary detail regarding the circumstances surrounding the fire investigation and the basis for the investigators' presence on the property, there is no clear or obvious basis for concluding that the investigation was illegal. Thus, defendant has failed to demonstrate a plain error.

*People v. Willis*, 2015 WL 4064268, at *9.

26

Especially with this ruling, there is no basis for granting habeas relief. Additionally, several of the police reports that Willis attached to his memorandum of law in support of the petition indicate that Danski consented to a search of the house. (*See* ECF No. 13, PageID.1195, 1201, 1204.)

The Supreme Court has held that "a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schenckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)). One such exception is a search that is conducted pursuant to consent. *Schneckloth*, 512 U.S. at 219 (citing *Davis v. United States*, 328 U.S. 582, 593-94 (1946)). Consent may be provided by "a third party who possessed common authority over or other sufficient relationship to the premises [to be searched or seized]." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

More importantly, even where a third party does not have the actual authority to consent to a search, "there is no Fourth Amendment violation if the police conducted the search in good faith reliance on the third-party's *apparent authority* to authorize the search through her consent." *United States v. Morgan*, 435 F.3d 660, 663-64 (6th Cir. 2006) (emphasis original). A third party's apparent authority to consent is judged by an objective standard; a search consented to by a third party is valid if the police officers conducting the search "reasonably could conclude from the

facts available that the third party had authority to consent to the search." *Id.* (quoting *United States v. Gillis*, 358 F.3d 386, 390-91 (6th Cir. 2004)).

The officer's reliance on Danski's authority to consent to a search of the home that she was renting was reasonable.  So any challenge to the search by Willis  would have been unsuccessful, and thus,  counsel was not ineffective for failing to file a motion to suppress. *See Ray v. United States*, 721 F.3d 758, 763 (6th Cir. 2013).

Next, Willis is also not entitled to relief on his claim that counsel was ineffective for failing to challenge the legality of the arrest warrant.

First, Willis failed to offer any evidence to either the Michigan Court of Appeals or to this Court to establish that there was no probable cause to issue the arrest warrant. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

Second, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)); *see also Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886). The Supreme Court has held that "the 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).  Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in

violation of the constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *Crews*, 445 U.S. at 474.

Willis does not identify any evidence other than his own body that was seized during his allegedly unlawful arrest. Thus, the mere fact that Willis may have been arrested without probable cause or that the arrest warrant was somehow defective would not prevent him from being prosecuted and convicted of this offense. Failing to file a frivolous motion to dismiss is not ineffective assistance of counsel. *See Goldsby v. U.S.,* 152 F. App'x. 431, 438 (6th Cir. 2005). Thus, Willis's trial counsel was not ineffective for failing to file a motion to dismiss on this basis. *See Friday v. Pitcher,* 200 F. Supp. 2d 725, 738–39 (E.D. Mich. 2002). Willis is not entitled to relief on his fifth or seventh claims.

### Claim 6 — Choice of counsel

Willis claims that he was denied the counsel of his choice. His real complaint, though, seems to be that the trial judge should have inquired into potential conflicts of interest between Willis and his lawyer due to financial issues.

On the first day of trial, Willis suggested that a conflict of interest might arise with his attorney because he was unable to pay his attorney's retainer fee. (ECF No. 7-5, PageID.161). On the second day of trial, Willis told the trial judge that his counsel said to him, perhaps jokingly, "Get me paid, bitch." (ECF No. 7-6, PageID.433.) Defense counsel adamantly denied these allegations, indicating surprise that they

were even being made. The judge indicated that Willis had made a record and that they were going to continue with the trial. (ECF No. 7-6, PageID.429, 432–34). Willis appears to argue that the trial court failed to undertake an adequate inquiry into this possible conflict of interest.

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692. For example, the "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Id.* The *Strickland* court further noted that cases involving an actual conflict of interest that adversely affects counsel's performance warrant a "similar, though more limited, presumption of prejudice." *Id.* This reference was to *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980), where the Supreme Court held that in order to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who failed to object at trial must demonstrate that an actual conflict of interest existed that adversely affected his attorney's performance.

Thus, to demonstrate a Sixth Amendment violation where a trial judge fails to inquire into a potential conflict of interest, a defendant must establish the existence of a conflict of interest that adversely affected counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 172-74 (2002). Unlike *Sullivan,* the *Mickens* case did not involve a conflict of interest based upon multiple representation. Instead, it involved successive representation, where the defendant's attorney had previously

30

represented the murder victim in a juvenile court proceeding. Although noting that the *Sullivan* rule had been applied "unblinkingly" to various kinds of conflicts of interest that did not involve multiple representation, the Supreme Court opined that the language in *Sullivan* "does not clearly establish, or indeed even support, such expansive application." *Id.* at 175. The Supreme Court further observed that *Sullivan* and the earlier case of *Holloway v. Arkansas*, 435 U.S. 475 (1978) "stressed the high probability of prejudice arising from multiple representation, and the difficulty of proving that prejudice." *Id.* In *Mickens*, however, the Court noted that "not all attorney conflicts present comparable difficulties" and concluded that it remained an "open question" whether *Sullivan* should be extended to cases other than multiple representation. *Id.* at 176.

In the aftermath of *Mickens,* the Sixth Circuit has been reluctant to apply the *Sullivan* rule to conflicts of interest that do not involve multiple representation of co-defendants. In *Smith v. Hofbauer,* 312 F.3d 809, 817 (6th Cir. 2002), the Sixth Circuit held that a habeas petitioner was not entitled to use *Sullivan's* lesser standard of proof for an ineffective assistance of counsel claim that arose from a conflict of interest other than multiple representation. Other cases have reached similar conclusions. *See McElrath v. Simpson,* 595 F. 3d 624, 631, n. 7 (6th Cir. 2010) ("The [Supreme] Court in *Mickens* clarified that, for purposes of review under AEDPA, its clearly established precedent has not applied the *Sullivan* standard outside the context of a counsel's concurrent representation of more than one defendant"); *Harrison v. Motley,* 478 F.3d 750, 756, 57 (6th Cir. 2007) (neither *Sullivan* nor *Holloway* applied to the

petitioner's claim that his lawyers had a conflict of interest in representing him based on their fears of criminal prosecution and malpractice for witness tampering); *Stewart v. Wolfenbarger*, 468 F. 3d 338, 351 (6th Cir.2006) ("This Court has consistently held that, for Section 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."); *Whiting v. Burt,* 395 F. 3d 602, 619 (6th Cir. 2005) (presumed prejudice standard is inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *United States v. Moss,* 323 F. 3d 445, 473, n. 25 (6th Cir. 2003) ("As we have discussed, *supra,* the *Mickens* rationale compels our strong hesitation to apply *Sullivan* to conflicts of interest cases arising outside of the joint representation context").

In sum, expanding the presumed prejudice standard of *Cuyler v. Sullivan* "beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law—one that clearly has not been dictated by prior Supreme Court precedent." *Whiting,* 395 F. 3d at 619–20. Here, counsel's alleged conflict of interest did not result from multiple concurrent representation of joint defendants at the same trial. So the presumed prejudice standard enunciated in *Cuyler v. Sullivan* is inapplicable to Willis's ineffective assistance of trial counsel claim. And Willis has failed to allege or show that he was actually prejudiced by the alleged conflict of interest between himself and his trial counsel. The judge's failure to engage in a more thorough inquiry about the impact of Willis's failure to pay his counsel did not deprive

32

Willis of his Sixth Amendment right to counsel. Willis is not entitled to relief on his sixth claim.

* * *

Having considered each of Willis's claims, the Court concludes that he is not entitled to habeas relief on any of the grounds that he has raised. The Court therefore denies the writ.

## IV.  Certificate of Appealability

Before Willis may appeal, this Court must issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). But Willis has not shown "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).  Thus, a certificate of appealability will not issue from this Court.  *Davis v. Rapelje*, 33 F. Supp. 3d 849, 865 (E.D. Mich. 2014). However, if petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## IV.  Conclusion

In summary, the Court GRANTS the motion for reconsideration (ECF No. 25) and accepts the Amended Petition as timely filed but DENIES Willis's Petition for Writ of Habeas Corpus with respect to all claims (ECF No. 1, 24).

The Court DENIES Willis a certificate of appealability and GRANTS leave to appeal *in forma pauperis*.

SO ORDERED.

Dated: September 14, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE